UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MICHAEL LUEBKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-1215-SEB-TAB |
| | ) | |
| PEDCOR HOMES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment
[Docket No. 27], filed on February 20, 2012.  Plaintiff, Michael Luebke, brings this
action against his former employer, Defendant, Pedcor Homes Corporation ("Pedcor"),
alleging that Pedcor terminated him to prevent him from taking advantage of vested
health benefits under its employee group health plan in violation of Section 510 of the
Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.  Mr. Luebke
also alleges that Pedcor terminated his employment in retaliation for his having filed a
workers' compensation claim, in violation of Indiana law.  For the reasons detailed
below, we <u>GRANT</u> Defendant's Motion for Summary Judgment.[1]

---

[1] On March 22, 2012, Plaintiffs filed an unopposed Motion for Leave to File Amended
Affidavit of Glenn Gaddis [Docket No. 33].  That motion is hereby <u>GRANTED</u>.

## Factual Background

On May 30, 2004, Michael Luebke began working as a Maintenance Supervisor for Pedcor at Lions Creek Apartments.  He was hired by Richard McCool, the Executive Vice President and Chief Operating Officer of Pedcor.  Two years later, on May 26, 2006, Mr. Luebke was promoted to the Director of Maintenance for Lions Creek and Grey Stone Apartments.  As part of his employment, Mr. Luebke was able to participate in Pedcor's employee group health plan, which provided medical, dental, and vision coverage.

**Plaintiff's Injury and Medical Leave**

On February 14, 2007, Mr. Luebke suffered an on-the-job injury while a Pedcor employee.  Mr. Luebke subsequently filed a worker's compensation claim and he received worker's compensation benefits as a result of his injury.  At the time he was injured, Mr. Luebke was enrolled in Pedcor's employee health plan.  On May 10, 2007, Mr. Luebke was cleared to return to light duty.  However, he continued to experience back pain resulting from his injury and a few months after he returned, when he again became unable to work, he went back on medical leave on August 27, 2007.  Because Mr. Luebke indicated that he would likely be on leave for some time, Pedcor reassigned his job duties to another employee, Trent Brooks.  Pedcor continued to carry Mr. Luebke as an employee and he thus was permitted to continue to receive his health care benefits.  On January 11, 2008, Mr. McCool sent a letter to Mr. Luebke stating that Pedcor anticipated that Luebke would return to work and that Pedcor intended to accommodate any

2

restrictions he might then have.[2]

**Plaintiff's Termination**

Nearly one year later, on December 27, 2009, Mr. Luebke sent an email to Pedcor stating that he had been released to return to work on January 4, 2010.  According to Pedcor, after receiving Mr. Luebke's worker's compensation release, it determined that no positions were then currently available.  Pedcor maintains that, because there was no open position for Mr. Luebke to fill, after consulting Tina Summerlott, Pedco's Director of Human Resources, Mr. McCool decided to terminate Luebke's employment.  Mr. McCool testified by deposition that, at the time he made the termination decision, he did not know whether Mr. Luebke was enrolled in Pedcor's employee group health plan.  Ms. Summerlott notified Mr. Luebke of his termination in a letter dated December 28, 2009, notifying him that he was being discharged effective January 4, 2010, due to a lack of available positions for him to occupy.  The letter further stated that COBRA information[3] would be sent to him and that he was eligible for rehire.

**Alleged Statements Made by Corporate**

Patricia Hildebrandt served as Property Manager for Lions Creek Apartments from the end of 2006 to November 2008.  At some point following her separation from

---

[2] Mr. Luebke's wife, Kimberly, also worked at Pedcor.  She was employed from June 2004 through December 2008 as a Regional Manager and was Mr. Luebke's supervisor. Kimberly testified that at no point either during or after her employment with Pedcor was she given any indication by anyone in the corporate office that Mr. Luebke was going to lose his job.

[3] Mr. Luebke completed the COBRA paperwork on February 1, 2010, and apparently has received COBRA benefits.

3

employment, she contacted Mr. Luebke and told him that she did not think Mr. McCool "had any intention" of bringing Luebke back to work at Pedcor, but she did not know the reason.  Hildebrandt Dep. at 21.  According to Ms. Hildebrandt, at some point shortly after Mr. Luebke's wife, Kimberly, left Pedcor in December 2008, she (Hildebrandt) had overheard a conversation between Mr. McCool and Regional Manager Debby Bell during which McCool stated: "[W]e don't know what's going on with [Mr. Luebke] right now. He's on Worker's Comp, and I'm not sure we're going to have a position for him when he comes back, if we have one at all."  Id. at 15-17.  Ms. Hildebrandt also testified that Ms. Summerlott had told her that she (Summerlott) was not sure whether Mr. Luebke was coming back, but if he did come back, he would likely be relegated to filing work in a cubicle in the office or would be "on the ground picking up poop."  Id. at 17-18.  Ms. Summerlott allegedly further stated: "We're not going to make it pleasant for him at all. He's not going to want to come back."  Id.  Ms. Summerlott did not give further explanation for that belief.  Id. at 18.

Mr. Luebke testified by deposition that another Pedcor employee, Glenn Gaddis, had told him that he (Gaddis) had overheard a conversation between Ms. Bell and Joni Cody, Manager of Lions Creek Apartments, during which they stated that they were not going to bring Luebke back to work because "they were going to 'own'" him and because of the cost of his worker's compensation and health insurance.  Luebke Dep. at 18.  Mr. Luebke could not remember when Mr. Gaddis told him about this conversation or when the conversation allegedly occurred.  Id. at 19.  In an affidavit filed with Plaintiff's

4

response in opposition to the instant motion, Mr. Gaddis put forth a slightly different

account of the conversation, testifying that, in December 2008, he had overheard Mr.

McCool tell Ms. Bell and Ms. Cody that McCool "had no intentions of bringing Mike

Luebke back to work for Pedcor because he would 'milk' Pedcor's health insurance and

that Mike had already cost Pedcor so much money from his workers' compensation

claim."  Amended Gaddis Affidavit ("Gaddis Am. Aff.") ¶ 4.

**The Instant Litigation**

  Mr. Luebke is currently unable to work because of the continuing effects of the

injury he sustained while employed at Pedcor.  Thus, he has not applied for any

employment since his termination and has not worked for any employer since August

2007.  On September 27, 2010, he filed this action against Pedcor, alleging that he had

been terminated in an effort to interfere with his rights under Pedcor's employee group

health plan, in violation of Section 510 of ERISA, and in retaliation for having exercised

his right to receive worker's compensation benefits, in violation of Indiana law.

<u>**Legal Analysis**</u>

**I.      Standard of Review**

  Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be

unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.     ERISA Claim

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140.  Under § 510, a plaintiff must "show that the reason he was terminated was to interfere with his rights under ERISA."  Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 576 (7th Cir. 1998) (citation omitted).  In other words, "[t]he employer must have the specific intent to deprive an employee of his plan rights."  Isbell v. Allstate Ins. Co., 418 F.3d 788, 796 (7th Cir. 2005) (citing Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 (7th Cir. 1998)).  A plaintiff may establish an ERISA violation using either the direct method of proof or the indirect, burden-shifting method.  Fairchild,

147 F.3d at 576.  It appears from the briefing that Mr. Luebke has elected to proceed solely under the direct method of proof.

To survive summary judgment under the direct method, a plaintiff must "creat[e] triable issues as to whether discrimination motivated the adverse employment action of which he complains." Nagle v. Village of Calumet Park, 554 F.3d 1106, 1114 (7th Cir. 2009) (citation omitted).  Under the direct method, one way a plaintiff may establish the required discriminatory intent is by relying on direct evidence. Id.  "'Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" Rudin v. Lincoln Land Cmty. College, 420 F.3d 712, 720 (7th Cir. 2005) (quoting Eiland v. Trinity Hosp., 150 F.3d 747, 751 (7th Cir. 1998)).  Such evidence usually requires an admission of discriminatory animus by the decision maker, which is understandably rare. Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006).  Because such evidence is so rare, the Seventh Circuit recognizes that "[a] plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004) (quoting Troupe v. May Dept. Stores Co., 20 F.3d 734, 737 (7th Cir. 1994)).

Here, Mr. Luebke contends that his is one such "rare" case in which there is actual direct evidence of the decisionmaker making statements tantamount to an admission of discriminatory animus.  Specifically, Mr. Luebke cites the alleged statement made by Mr.

8

McCool to Ms. Bell and Ms. Cady, as overheard by Mr. Gaddis, that McCool "had no intentions of bringing Mike Luebke back to work for Pedcor because he would 'milk' Pedcor's health insurance and [because] Mike had already cost Pedcor so much money from his workers' compensation claim." (Gaddis Am. Aff. ¶ 4).  This, Mr. Luebke contends, constitutes direct evidence that McCool terminated him in order to prevent him from taking advantage of his health plan benefits.  We disagree.

Initially, we note that Mr. Gaddis's affidavit testimony contradicts Mr. Luebke's own deposition testimony about what Mr. Gaddis told him about the conversation.  Mr. Luebke testified that the conversation allegedly overheard by Mr. Gaddis was between the "regional [manager] and the manager," who stated that they were going to "own" Luebke and that he would not be brought back to work because of the cost of his workman's compensation and health insurance.  Luebke Dep. at 18-19.  However, the evidence makes clear that it was Pedcor's CEO, Mr. McCool, who was responsible for making the decision to terminate Mr. Luebke, not the regional manager or the manager. It was only after this fact was raised in Defendant's brief in support of the instant motion that Plaintiff filed Mr. Gaddis's affidavit in which Gaddis testifies that the statements he overheard were actually made by Mr. McCool.  Moreover, Mr. Gaddis's affidavit fails to provide any additional corroborating details about Mr. McCool's statement, such as the specific time at which he overheard it, where the conversation occurred, or how he was in a position to overhear it.

Even accepting as true Mr. Gaddis's recollection (which is more favorable to Mr.

9

Luebke's case than Mr. Luebke's own testimony), it does not constitute direct evidence of discrimination.  The Seventh Circuit has recognized "in the context of direct and circumstantial evidence of discrimination," that "a long time period between a remark and an employment action can defeat the inference of a 'causal nexus between the remark and the decision to discharge.'" Bellaver v. Quanex Corp., 200 F.3d 485, 493 (7th Cir. 2000) (quoting Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996)).  Here, Mr. Gaddis testified that he overheard Mr. McCool's statement in December 2008, more than a year before Mr. Luebke was terminated.  As such, the statement cannot be viewed as temporally related to Mr. Luebke's termination.  Nor was this statement made during the course of the decision making process.  See Geier, 99 F.3d at 242 ("[I]solated comments must be contemporaneous with the discharge or causally related to the discharge decision making process.") (citations omitted).

In fact, Mr. Luebke continued as an employee and remained enrolled in Pedcor's health plan for another year after the comment was made.  Moreover, following Mr. Luebke's termination, Pedcor designated him as eligible for rehire.  It is unclear why Pedcor would maintain Mr. Luebke's employment for an additional year, maintain his eligibility in the group health plan, and make him eligible for rehire, if it was trying to prevent Mr. Luebke from returning to work because of his eligibility for health benefits.

Mr. Luebke also relies on the alleged exchange between Ms. Hildebrandt and Ms. Summerlott as circumstantial evidence from which the jury could draw a reasonable inference of intentional discrimination.  It is well-established under Seventh Circuit law

that "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." Merillat v. Metal Spinners, Inc., 470 F.3d 685, 694 (7th Cir. 2006) (citing Cullen v. Olin Corp., 195 F.3d 317, 323 (7th Cir. 1999)).  However, as discussed above, a statement that might otherwise be considered a "stray remark" can provide an inference of discrimination when it was "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007) (citing Merillat, 470 F.3d at 694).  Here, Ms. Summerlott's alleged comment to Ms. Hildebrandt that she was not sure whether Mr. Luebke would be returning to work, but if he did, that he would be assigned undesirable tasks, does not satisfy these criteria.

Most importantly, Ms. Summerlott was not the decision maker acting on behalf of Pedcor.  The parties do not appear to dispute that Mr. McCool was the sole decision maker in this case.  See Pl.'s Resp. at 10 (referring to McCool as "the sole decision-maker with regard to Plaintiff's termination").  Although Mr. McCool testified by deposition that he consulted Ms. Summerlott before he made the decision to terminate Mr. Luebke, the undisputed evidence in the record establishes that consultation occurred merely for Mr. McCool to inquire as to whether a position was open and available.  There is no evidence that Ms. Summerlott advised Mr. McCool in any substantive or material way regarding the Luebke termination decision, or that she was otherwise involved in the decision making process or that Mr. McCool was even aware of Ms. Summerlott's

11

comments.  Moreover, there is no evidence in the record before us to establish that Ms. Summerlott's statements were made at or near the time of Mr. Luebke's termination so to support an inference of intentional discrimination.  Accordingly, we find that her comments were merely stray remarks and thus insufficient support for this discrimination claim under the direct method of proof.

## III.   Worker's Compensation Retaliation Claim

Under Indiana law, an at-will employee may recover if he is terminated in retaliation for filing a worker's compensation claim.  Framptom v. Central Indiana Gas Co., 297 N.E.2d 425 (Ind. 1973).  "In order to be successful on a claim for retaliatory discharge, a plaintiff must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right."  Purdy v. Wright Tree Serv., Inc., 835 N.E.2d 209, 212 (Ind. Ct. App. 2005) (citations omitted).  In this context, "solely" means "only that any and all reasons for the discharge must be unlawful in order to sustain the claim for retaliatory discharge."  Id. (citations omitted).

In order to survive summary judgment, a plaintiff "must establish a causal connection between his termination and the filing of his workers' compensation claim."  Hudson v. Wal-Mart Stores, Inc., 412 F.3d 781, 785 (7th Cir. 2005) (citing Goetzke v. Ferro Corp., 280 F.3d 766, 774 (7th Cir. 2002)).   Causation may not be inferred merely from evidence that the employee was entitled to benefits and was terminated.  Mack v. Great Dane Trailers, 308 F.3d 776, 784 (7th Cir. 2002) (citation omitted).  "Depending on the circumstances, however, causation may be inferred from the 'rapidity and proximity in

12

time' between the employee's filing for benefits and the discharge, or from evidence that the employer's proffered reason for the discharge is 'patently inconsistent with the evidence before the court.'" Id. (quoting Markley Enters., Inc. v. Grover, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999) (internal citation omitted). A plaintiff may establish causation using either direct or indirect evidence. Purdy, 835 N.E.2d at 213.

Here, Mr. Luebke asserts that he received notice of his termination one day after he advised Pedcor that he had been cleared to return to work which fact establishes the required temporal proximity. However, Mr. Luebke had first filed his worker's compensation claim three years earlier. It is unclear how Pedcor's knowledge that Mr. Luebke's worker's compensation leave was ending supports an inference that it fired him for applying for benefits three years before. Rather, the fact that Mr. Luebke had been receiving worker's compensation benefits for almost three years is "timing that tends to negate, rather than support, an inference of causation." Mack, 308 F.3d at 784 (citations omitted).

Nor is there sufficient evidence that Pedcor's proffered reason for Mr. Luebke's termination, to wit, the lack of an available position, was "patently inconsistent with the evidence before the court" and thus pretextual. To demonstrate pretext, "an employee must produce evidence showing that (1) the employer's stated reason has no basis in fact; (2) although based in fact, the stated reason was not the actual reason for the discharge; or (3) the stated reason was insufficient to warrant the discharge." Smeigh v. Johns Manville, Inc., 643 F.3d 554, 561 (7th Cir. 2011) (citing Powdertech, Inc. v. Joganic, 776

N.E.2d 1251 (Ind. Ct. App. 2002)).  Mr. Luebke contends that Mr. McCool's alleged

statement, as overheard by Mr. Gaddis, that McCool did not intend to bring Mr. Luebke

back to work for Pedcor because Luebke "had already cost Pedcor so much money from

his worker's compensation claim," (Gaddis Am. Aff. ¶ 4), constitutes evidence of pretext

so to support the necessary inference of causation.  As noted above, Mr. Gaddis allegedly

overheard Mr. McCool make this statement in December 2008, one year before Mr.

Luebke was terminated.

 We hold that this statement alone, made a full year before Mr. Luebke's

termination, is insufficient to demonstrate pretext.  There is no evidence in the record that

would support a conclusion that Pedcor unnecessarily reassigned Mr. Luebke's duties

while he was on leave.  Nor has Mr. Luebke presented any evidence to establish that there

was in fact a position open to which he could have returned that would raise suspicions

about the veracity of Pedcor's proffered reason for his termination.[4]  For these reasons,

Mr. Luebke has failed to show that his discharge was solely in retaliation for his having

filed a claim for worker's compensation three years earlier.

---

 [4] Mr. Luebke claims that his replacement, Trent Brooks, was not performing adequately
and that he should have been placed back in his original position instead of Brooks.  In support
of this assertion, he points to certain testimony from Ms. Hildebrandt, who oversaw Mr. Brooks,
that she had suspicions that he was using drugs.  However, Ms. Hildebrandt's testimony was
based on nothing more than rumors about Mr. Brooks.  There is no evidence in the record that
Mr. Brooks received a poor work review or other discipline nor is there any allegation that Ms.
Hildebrandt reported her suspicions to Mr. McCool before or at the time Mr. Luebke was
released to return to work.

**IV.     Conclusion**

For the foregoing reasons, we <u>GRANT</u> Defendant's Motion for Summary

Judgment.  Final judgment shall enter accordingly.

IT IS SO ORDERED.


Date:   _08/06/2012_
_____

_Sarah Evans Barker_
_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

15

Copies to:

Michele E. Cooley
PEDCOR COMPANIES
mcooley@pedcor.net

Joel Samuel Paul
RAMEY & HAILEY
joel@rameyandhaileylaw.com